**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATHI SUTTON, as Legal Guardian of
James E. Sutton, II, a minor,

      Plaintiff-Appellant,

v.

UTAH STATE SCHOOL FOR THE
DEAF AND BLIND, DWIGHT MOORE,
individually and in his official capacity as
principal for the Utah State School for the
Deaf and Blind, JOHN DOES 1-5, and
JANE DOES 1-5,

      Defendants-Appellees.

No. 97-4019

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 96-CV-880)**

---

Stacey L. Hayden of Poole & Associates, Salt Lake City, Utah, for Plaintiff-Appellant.

Brent Burnett (Debra J. Moore on the briefs) of Utah Attorney General's Office, Salt Lake City, Utah, for Defendants-Appellees.

---

Before **HENRY, HOLLOWAY** and **LUCERO,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

Plaintiff-appellant, Kathi Sutton, on behalf of her minor son, James Sutton, brought the present action against defendants, Utah State School for the Deaf and Blind and Dwight Moore, its principal, in the Third District Court, State of Utah, in September 1996. An amended complaint was filed in October 1996 which expanded the plaintiff's claims to allege a federal civil rights violation under 42 U.S.C. § 1983, as well as state law claims of negligence, breach of contract and promissory estoppel. App. at 1-11. Defendants subsequently removed this action to the United States District Court for the District of Utah, by a notice of removal filed by the Office of the Attorney General of Utah. Id. at 12-14. The federal district judge, upon motion of defendants, dismissed the § 1983 cause of action with prejudice for failure to state a claim. App. at 152-160. With the dismissal of the sole federal claim, the district court declined to retain supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. Id. at 160.

This appeal followed. The central substantive issue before this court is whether the judge below erred in dismissing the § 1983 claim.

**I**

The plaintiff-appellant relies on these facts which she averred: James suffers from severe cerebral palsy, mental retardation, total blindness, and he is unable to speak. App. at 2. Because of his disabilities, James attended school at the Utah State School for the Deaf and Blind. Id. at 2. On February 16, 1995, James communicated to his mother, Kathi, that he had been sexually assaulted while using the bathroom at the school. Id. at 2. James

communicated to Kathi through sign language that a boy at school had touched him several times in his genital area while James was in the bathroom; that the boy who touched him went to his school and was a very large boy, not in his class. Amended Complaint, ¶ 7, App. at 2. Kathi immediately notified the school superintendent, Robertson, the principal, Moore, and James's teacher, LaRae Terry. The next morning Kathi met with Moore and Terry and told them exactly what James had told her. "She specifically informed them that James had told her that he had been repeatedly sexually abused, while he was going to the bathroom, at the school, by another student who was much larger than James." Id. at ¶ 8, App. at 2.

In this meeting Moore and Terry repeatedly assured Kathi that the children were not allowed to go to the bathroom alone and that there was no way this could have happened to James. Id. at ¶ 9, App. at 3. Moore and Terry took no further action and told Kathi there was nothing more they could do but provide constant supervision of James while in the bathroom. Kathi was reassured and promised by Moore and Terry that James would be supervised at all times while in the bathroom. Id. at ¶ 10, App. at 3.

On February 23, 1995, James again complained to his mother that he had been assaulted by the same boy in the school's bathroom. Moore also notified Kathi of the assault and the assailant's apprehension on the same day. Amended Complaint, ¶ 11, App. at 3. The juvenile assailant, a student at the school, was later convicted of gross lewdness and forcible sexual assault on James, arising from the two attacks in February 1995. During the assailant's trial, a teacher's aide at the school, Diana Rogers, testified that on February 23,

she had escorted James to the bathroom and stood outside the open door waiting for him.[1]

Id. at 97, 154. While James used the facilities, Rogers abandoned her post in order to answer a telephone. About three minutes after leaving the bathroom, Rogers returned to find the door closed. Id. Hearing a strange noise, Rogers entered the bathroom, forced open the stall, and discovered the same assailant molesting James. Id. Moreover, plaintiff-appellant avers that as a result of the School's and Moore's conduct, James has suffered severe physical and psychological harm, uncontrollable rages, severe nightmares, compulsive and uncontrollable behavior, and severe mental distress. App. at 5.

In February 1996, Kathi filed a Notice of Claim on behalf of James under Utah Code Ann. § 63-30-11 with the Utah Department of Education, the Utah Department of Risk Management, and the Utah Attorney General, seeking damages for physical pain and emotional distress.[2] App. at 100, 119-126, 154. In May 1996, the State of Utah denied liability and refused to pay any damages. Id. at 100-101, 128-129, 154. On September 6, 1996, Kathi filed the present action in Utah state court, alleging negligence. Id. at 101, 154. Kathi filed an amended complaint on October 7, 1996, in the state court, adding allegations

---

[1]The district court took the facts detailing Rogers' trial testimony from plaintiff-appellant's memorandum in opposition to defendants' motion to dismiss. The amended complaint does not detail the facts which led to the February 23 incident. No appellate issue is raised concerning the judge's reliance on the facts alleged in plaintiff-appellant's memorandum.

[2]As with the facts concerning Rogers' testimony, the procedural history recited by the district court is not contained in the amended complaint. These facts are, however, contained in plaintiff-appellant's memorandum in opposition to defendants' motion to dismiss.

of breach of contract, promissory estoppel, and a civil rights violation under 42 U.S.C. § 1983. In support of the latter claim, it was averred that defendants, by failing to supervise James and other students while in the restroom as school policy required, created the danger that permitted the assailant to repeatedly molest James while in the restroom unsupervised. Amended Complaint, ¶ 23, App. at 6.

With this assertion of a federal claim, defendants removed the action to the United States District Court for the District of Utah and filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Id. at 12-14, 76-91. After conducting a hearing on defendants' motion in December 1996, the district judge entered his memorandum and order, finding that Kathi failed to allege the violation of a constitutional right under § 1983, and granting defendants' motion to dismiss with prejudice under Rule 12(b)(6) with respect to the sole federal claim. Id. at 152-160. The judge declined then to entertain the supplemental state law claims and dismissed them without prejudice.

## II

At oral argument before this court, counsel for defendants raised for the first time the Eleventh Amendment[3] as a defense to plaintiff-appellant's claim. Because the Eleventh

---

[3]The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite its express language, the Amendment has been interpreted to apply to suits against a State by its own citizens. See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997).

Amendment defense has jurisdictional attributes, see Edelman v. Jordan, 415 U.S. 651, 677-78 (1974); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1559 (10th Cir. 1992), modified on other grounds on reh'g, 995 F.2d 992, 994 (10th Cir. 1993), it may be raised at any point, including for the first time on appeal. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.8 (1984); see also V-1 Oil Co. v. Utah St. Dep't of Pub. Safety, 131 F.3d 1415, 1419 (10th Cir. 1997)(appellate court may raise and consider Eleventh Amendment immunity *sua sponte*).

> The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal jurisdictional power of such compelling force that this Court will consider the issue arising under this amendment . . . even though urged for the first time in this Court.

Ford Motor Co. v. Dep't of Treasury of Indiana, 323 U.S. 459, 467 (1945). If applicable, the Eleventh Amendment bars suits against states in federal court. V-1 Oil Co., 131 F.3d at 1420.

## A

### "Arm of the State"

Only a state or "arms" of a state may assert the Eleventh Amendment as a defense to suit in federal court. Ambus, 995 F.2d at 994. Whether a particular political subdivision is an "arm of the state" is determined by examining four factors: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf. Ambus, 995 F.2d at 994 (citing

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).

We have previously held that local school districts in Utah are not "arms of the state" for purposes of asserting the Eleventh Amendment. Ambus, 995 F.2d at 997 (noting that there was significant local board authority over school district operations and any "monetary damages awarded to plaintiff in this case would not come directly from the state treasury, but would be assessed against the school board . . . ."). But Ambus does not necessarily determine the issue whether the Utah State School for Deaf and Blind is an arm of the state because the school is an entity independent of the local school district. See Utah Code Ann. § 53A-25-101-102 (School for the Deaf), § 53A-25-201-202 (School for the Blind); cf. Roach v. University of Utah, 968 F. Supp. 1446, 1450-51 (D. Utah 1997)(University of Utah is an "arm of the state.").[4]

We are thus required to apply the four factors described above to determine whether the Utah State School for Deaf and Blind is an "arm of the state."[5] First, we examine its characterization under Utah law. Like local school districts, the School for Deaf and Blind shares in state sovereign immunity. See S.H. By and Through R.H. v. Utah, 865 P.2d 1363, 1364-65 (Utah 1993)(citing Utah Code Ann. § 63-30-10(2)). But as we stated in Ambus, the

---

[4]We note that Utah has defined "school district" to include the schools for the deaf and blind, Utah Code Ann. § 53A-8-102(7), but has done so only in the limited context of school employee termination procedures. Id. Moreover, Utah includes the schools for the deaf and blind as recipients of proceeds of bonds issued pursuant to the Public Education Revenue Bond Act, Utah Code Ann. § 53A-20a-102, but Utah law excludes local school districts.

[5]Though the name of the school includes the word "State," mere labeling of a governmental entity is not sufficient to find it an "arm of the state."

fact that a school district is entitled to state sovereign immunity does not determine the extent of Eleventh Amendment immunity.  <u>Ambus</u>, 995 F.2d at 995.

Second, it appears that the School for the Deaf and Blind exercises control similar to the control exercised by a local school district.  Like local school districts, Schools for the Deaf and Blind are public corporations that "may sue and be sued, contract and be contracted with, and may take and hold . . . real and personal property required for its uses."  Utah Code Ann. § 53A-25-102; § 53A-25-202.  The School is free to handle its property as it sees fit.  <u>Id.</u>

Unlike local school districts, the persons who make up the board of trustees which governs the School for the Deaf and Blind are members of the State of Utah's Board of Education.  Utah Code Ann. § 53A-25-104; § 53A-25-204.  In <u>Ambus</u>, we gave significant weight to the fact that local school boards, which consist of members who are locally elected, exercise responsibilities free from state control.  <u>Ambus</u>, 995 F.2d at 996.  Because the School for the Deaf and Blind is governed by a board consisting solely of state board of education members, clearly the state exercises control over the school.

The third and fourth <u>Mt. Healthy</u> factors concern whether a judgment against the school would be paid out of the state treasury.   <u>Id.</u>  The key question is whether funds to satisfy a money judgment would come directly from the state or indirectly through commingled state and local funds or state indemnification provisions.  <u>Id.</u>

In Utah, judgments against local school districts are not paid directly from the state

treasury. Id. at 997 ("the Utah Constitution prohibits the state from assuming a school district's debt, so the state could not directly pay judgments rendered against the district. Utah Const. art. XIV, § 6.").

It is not clear from Utah's statutory scheme and case law how the State School for Deaf and Blind satisfies money judgments against it.[6] Nevertheless, we are persuaded that the State School for the Deaf and Blind is an "arm of the state" entitled to Eleventh Amendment immunity. In Watson v. University of Utah Med. Ctr., 75 F.3d 569 (10th Cir. 1996), we held that the University of Utah and its medical center were "arms of the state." Id. at 575-77. There we placed emphasis on the fact that the University was controlled by a sixteen-member board of regents, fifteen of whom were appointed by the Governor. Id. Similarly, the State School for the Deaf and Blind's board members are members of the State Board of Education. We hold that the Utah State School for the Deaf and Blind is an arm of the State for purposes of asserting the Eleventh Amendment.

**B**

**Waiver of the Eleventh Amendment**

Because the School is an "arm of the state," it may assert the Eleventh Amendment as a defense in federal court unless it has waived the defense and consented to suit in federal

---

[6]The lack of clarity of the School's funding to cover liabilities is due in part to the fact that the defendants raised the Eleventh Amendment defense at oral argument with no supporting documentation. We do note that the Schools for the Deaf and Blind receive money for the financing of projects or buildings through bonds issued by the State Board of Education. Utah Code Ann. § 53A-20a-103.

court. As a general rule, "[i]n the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction, we decline to find that [the State] has waived its constitutional immunity." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). In Atascadero, the Court noted two of the ways by which a State may effectuate a waiver of its constitutional immunity. Id. at 238 n.1. First, the state's constitution or statutes may waive the Eleventh Amendment. Id. Second, a state may effectuate a waiver "by otherwise waiving its immunity to suit in the context of a particular federal program." Id.

We have previously held that Utah has not waived its Eleventh Amendment immunity by statute. In Johns v. Stewart, 57 F.3d 1544 (10th Cir. 1995), we held Utah did not waive its immunity with respect to a suit brought in federal court alleging a violation of the Social Security Act, Fair Labor Standards Act and Utah's Administrative Rulemaking Act, reasoning "Utah law expressly provides that its state district courts have exclusive original jurisdiction over suits brought against it." Id. at 1554 (citing Utah Code Ann. § 63-30-16). Because Utah provided for exclusive original jurisdiction in its own courts, we concluded Utah clearly intended "to retain Eleventh Amendment immunity." Id.; see also V-1 Oil, 131 F.3d at 1421; Richins v. Industrial Constr., Inc., 502 F.2d 1051, 1055 (10th Cir. 1974). Thus we do not find a waiver of Eleventh Amendment immunity in the Utah statutes themselves.

But our inquiry into waiver does not end here. In this case plaintiff-appellant filed suit in state court. Then it was the defendants, the School and Moore, the principal, that removed the case to federal court. In Gallagher v. Continental Ins. Co., 502 F.2d 827, 830 (10th Cir.

- 10 -

1974), we held that the Eleventh Amendment defense was waived when a defendant State removed a case from state court to federal court. Id. In holding that the State's removal of the case to federal court waived the State's Eleventh Amendment immunity, we stated:

> Whether immunity is a constitutional or common law bar, the Court has held that the bar may be waived by consent to suit . . . . In the instant case the state made a general appearance, joined in the removal petition and the resistance to plaintiffs' remand motion, moved to dismiss for failure to state a claim, and on appeal reasserts its contentions made in the district court. It appears by its attorney general whose authority to take the mentioned actions is not questioned.

Id. Gallagher has not been overruled by this court.[7] "We cannot overrule the judgment of another panel of this court. We are bound by the decision absent en banc consideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).

Supreme Court cases subsequent to Gallagher do not mandate a contrary rule. In Atascadero, the Supreme Court clarified the test for determining waiver of the Eleventh Amendment. The test is strict and there must be an "unequivocal intent" to waive the immunity. Atascadero, 473 U.S. at 241. But an unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum. See

---

[7]In Archuleta v. Lacuesta, 131 F.3d 1359, 1362 (10th Cir. 1997), we discussed Eleventh Amendment immunity as a jurisdictional bar and stated that "it is unclear whether the Supreme Court would consider Eleventh Amendment immunity to be an affirmative defense or a jurisdictional bar (which nonetheless can be waived) for the purposes of the removal statute." See also Flores v. Long, 110 F.3d 730, 732 (10th Cir. 1997)(same). Neither Archuleta nor Flores discussed or cited Gallagher.

- 11 -

Wisconsin Dep't of Corrections v. Schacht, 118 S. Ct. 2047, 2056-57 (1998)(Kennedy, J., concurring); see also Gardner v. New Jersey, 329 U.S. 565, 574 (1947)(State waives Eleventh Amendment immunity by voluntarily appearing in bankruptcy court to file a proof of claim).

The Court's recent decision in Schacht does not abrogate our Gallagher holding. The plaintiff in Schacht had filed a 42 U.S.C. § 1983 claim in state court against state officials in both their official and personal capacities. The state removed the case to federal court and argued that the Eleventh Amendment destroyed federal jurisdiction. The Court held that "the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist." Id. at 2051.

Despite dictum to the contrary, see id. at 2053 ("at the time of removal, this case fell within the 'original jurisdiction' of the federal courts. The State's later invocation of the Eleventh Amendment placed the particular claim beyond the power of the federal courts to decide, but it did not destroy removal jurisdiction over the entire case."), it is clear by the Court's holding that it was not prepared to address, and did not resolve, the issue whether removal itself constituted a waiver. Id. at 2051 (the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar . . . .")(emphasis added); id. at 2054 (Kennedy, J., concurring)("In joining the opinion of the Court, I write to observe we have neither reached nor considered the argument that, by giving its express consent to removal of the case from state court, Wisconsin waived its Eleventh Amendment immunity.").

- 12 -

Even though <u>Gallagher</u> stands for the proposition that the actions of the state there waived Eleventh Amendment immunity, <u>Gallagher</u> does not discuss the issue whether the state official who removes the case had authority to waive Eleventh Amendment immunity. <u>Richins v. Industrial Constr., Inc.</u>, 502 F.2d 1051 (10th Cir. 1974), is instructive. We there pointed out that the Utah statutes (§ 63-30-16) provided that:

> The district courts shall have <u>exclusive</u> original jurisdiction over any action brought under this act and such actions shall be governed by the Utah Rules of Civil Procedure in so far as they are consistent with this act.

<u>Id.</u> at 1055 (emphasis in original). The same statutory provision exists today with immaterial changes in wording. <u>See</u> Utah Code Ann.§ 60-30-16. We there faced the question whether the federal court had jurisdiction over a claim against the Utah State Road Commission to award judgment in favor of a defendant/third-party plaintiff for conversion of personal property. We said that the statute quoted above and the force of the Eleventh Amendment barred such jurisdiction:

> The Utah statute goes beyond mere consent to be sued in its own courts in that it expressly declares that its own courts are the exclusive tribunals for suits against it. This is a positive expression of policy against suits against Utah in United States courts.

<u>Richins</u>, 502 F.2d at 1055. We rejected the idea that the Eleventh Amendment could be waived by the Attorney General of Utah by entering an appearance and litigating in the case in the face of the statutory language. We stated:

> We are of the opinion that it cannot be so waived. Some discretion in finding an implied waiver is suggested by the Supreme Court in Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S. Ct. 785, 3

L.Ed.2d 804 (1959). The decision, however, of our court in Williams v. Eaton, 443 F.2d 422 (10th Cir. 1971), shows a preference for an approach giving full effect to the Eleventh Amendment absent some extraordinarily effective waiver. Neither decision would justify a finding of waiver here.

Id. at 1056 (emphasis added).

Our question, then, is whether the instant case presents circumstances of an "extraordinarily effective waiver." We think that it does. Here, after the filing in the Utah state court on September 6, 1996, of plaintiff-appellant's complaint, the School filed a motion to dismiss in the state court on September 24. On October 7, 1996, plaintiff-appellant filed an amended complaint and jury demand in the state court. On October 17, 1996, a notice of removal was filed by the "Office of the Attorney General" of Utah for defendants, the State School for the Deaf and Blind and the principal, Dwight Moore. Thus, the invocation of federal court jurisdiction was brought about by defendants' own counsel.

We are convinced that, as in Gallagher, 502 F.2d at 830, the Eleventh Amendment bar to suit against Utah was effectively waived by the Office of the Attorney General of Utah. That office not only caused the removal of the case from state to federal court; the Attorney General's Office for the State has also litigated the merits of the case following its October 17, 1996, removal. The Attorney General's Office filed in federal court on October 25, 1996, its motion to dismiss with prejudice under Fed. R. Civ. P. 12(b)(6) (failure to state a claim for relief), App. at 76-77, and its supporting memorandum for dismissal, id. at 78-91, and its reply memorandum of November 18, 1996, on the lack of merit of the amended

complaint, id. at 142-151.[8]  In Gallagher, we pointed out that there

> The state made a general appearance, joined in the removal petition and the resistance to plaintiffs' remand motion, moved to dismiss for failure to state a claim, and on this appeal reasserts its contentions made in the district court. It appears by its Attorney General whose authority to take the mentioned actions is not questioned.

Id. at 830.

We are persuaded that the actions taken by the state here amounted to an "extraordinarily effective waiver." Richins, 502 F.2d at 1056.  The Supreme Court has held that waiver of the Eleventh Amendment occurred where a state filed a claim for taxes in a bankruptcy reorganization proceeding; the Court rejected objections by the State Attorney General that entertaining the Trustee's petitions for adjudication of the tax claims would constitute a prohibited suit against the state: "When the State becomes the actor and files a claim against the fund, it waives any immunity it otherwise might have had respecting the adjudication of the claims."  Gardner v. New Jersey, 329 U.S. 565, 574 (1947) (emphasis added).  See also In re Straight, 143 F.3d 1387, 1392 (10th Cir.), cert. denied, 119 S. Ct. 446 (1998)(waiver of Eleventh Amendment immunity by filing proofs of claim in bankruptcy court).

The Attorney General's Office having caused the removal to federal court here, and

---

[8]These memoranda addressed the failure of the amended complaint to state a claim under § 1983, the qualified immunity of defendant Moore, and sovereign immunity of the State and its agencies and officers when sued in their official capacity, but not Eleventh Amendment immunity of the defendants.

having litigated throughout on the merits here, we feel it would be contrary to these precedents as well as grossly inequitable to allow assertion of the Eleventh Amendment bar by the contention made at oral argument before us. As the Supreme Court long ago held in Gunter v. Atlantic Coast Line, 200 U.S. 273, 284 (1906):

> Although a State may not be sued without its consent, such immunity is a privilege which may be waived, and hence where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment. Clark v. Barnard, 108 U.S. 436, 447.[9]

### III

"As the sufficiency of a complaint is a question of law, we review *de novo* the district court's grant of a motion to dismiss pursuant to 12(b)(6)," GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997), applying the same standards as the district court. David v. City and County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996), cert. denied, 118 S. Ct. 157 (1997). That is, all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF, 130 F.3d at 1384. "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

---

[9]See Wisconsin Dept. of Corrections v. Schact, 118 S. Ct. 2047, 2055 (1998) (Kennedy, J., concurring)(quoting Gunter).

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

As noted above, some of the facts which the district court relied on in ruling on defendants' motion to dismiss are not contained in plaintiff-appellant's amended complaint. However, where the judge recited facts from plaintiff-appellant's memorandum in opposition to the motion to dismiss, there was and is no objection by either party to his procedure. See notes 1 and 2, supra.

## A

## Stating a Substantive Due Process Claim

As for his second cause of action alleged in the amended complaint,[10] plaintiff-appellant claimed that defendants, acting as "persons" under "color of state law," deprived James of "his rights, privileges and immunities secured by the U.S. Constitution by failing to protect [him] from sexual molestation by another student," in violation of 42 U.S.C. § 1983. App. at 5-6. More specifically, plaintiff-appellant alleged that by failing to adhere to school policy requiring the supervision of James and other students while in the restroom, defendants "created the danger" which ultimately led to the assaults upon James.[11] Id. Based

---

[10]The first, third, and fourth causes of action alleged in the amended complaint are state law claims of negligence, breach of contract, and promissory estoppel, which the district court dismissed without prejudice, and which we do not consider in this appeal.

[11]Although the second cause of action also alleges an equal protection claim, plaintiff-appellant's counsel conceded at oral argument on appeal that this case presents no

- 17 -

on these allegations, plaintiff-appellant sought an unspecified amount of damages from both defendants, as well as costs and fees. Id. at 7. As support for the § 1983 claim, plaintiff-appellant incorporated all facts previously set forth in the amended complaint, id. at 5, which are detailed above.

We begin with the civil rights claims for money damages against the School for the Deaf and Blind and principal Moore in his official capacity. The Supreme Court held in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71. Because the School and Moore, acting in his official capacity, are not "persons" under § 1983, plaintiff-appellant's claims for money damages against them must fail because a cause of action under § 1983 requires a deprivation of a civil right by a "person" acting under color of state law. Id. at 64-65.

But a state official in his or her individual capacity is a "person" under § 1983. We thus consider whether plaintiff-appellant has alleged facts sufficient to state a claim under § 1983 against Moore in his individual capacity. "In deciding whether [plaintiff-appellant has] pled a cognizable claim, we must determine whether [he] can allege the deprivation of a constitutional right." Graham v. Independent School Dist. No. I-89, 22 F.3d 991, 993 (10th Cir. 1994). It is well-settled that a state does not have a constitutional duty to protect its

---

valid equal protection claim; rather, counsel conceded that the § 1983 cause of action is grounded entirely in substantive due process.

citizens from private violence. See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-197 (1989) (noting that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," and holding that "a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause"). Rather, state actors are generally liable under the Due Process Clause only for their own acts. Id.

There are, however, two established exceptions to this general rule: (1) the "special relationship" doctrine, and (2) the "danger creation" theory. Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995). Abandoning any theory that compulsory school attendance laws give rise to a "special relationship," a question we do not reach, plaintiff-appellant relies entirely on the "danger creation" theory.

## B

### The "State-Created Danger" Doctrine

The "danger creation" doctrine generally provides that state officials may be liable for injuries caused by a private actor where those officials created the danger that led to the harm.[12] Plaintiff-appellant presses on appeal two variations of the "danger creation" doctrine. First, Moore created the danger that James faced by directly participating in placing

---

[12]As Uhlrig notes, the classic "danger creation" case is the Ninth Circuit case of Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), in which police officers impounded the plaintiff's car and abandoned her in a high crime area in the middle of the night. Uhlrig, 64 F.3d at 572.

him in harm's way.  Second, Moore failed to adopt a protective policy and inadequately informed and trained school employees so as to enhance the danger of sexual assault to James.  While we affirm the district court's dismissal with prejudice as to the first claim, we reverse the district court on the second claim.

## 1

### Moore's alleged direct participation in enhancing the danger

"For the state to be liable under § 1983 for creating a special danger ( i.e., where a third party other than a state actor causes the complained of injury), a plaintiff must allege a constitutionally cognizable danger." Uhlrig, 64 F.3d at 572.  However, "it is not enough to show that the state increased the danger of harm from third persons; the [§] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff." Id. at 573 (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 531 (5th Cir. 1994)).  That is, plaintiff-appellant's claim must be "predicated on reckless or intentionally injury-causing state action which 'shocks the conscience'" of federal judges. Id. at 572-73 (quoting Collins v. City of Harker Heights Tex., 503 U.S. 115 (1992)).  Further, this "danger creation" doctrine "'necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger.'" Id. at 572 n.6 (quoting Graham, 22 F.3d at 995).[13]

---

[13]In Graham, we held that "foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship." 22 F.3d at 994.  Hence, when no special relationship exists between a plaintiff and defendants, "defendants' alleged nonfeasance in the face of specific information which would mandate action does not invoke the protections of the Due Process Clause.  'Inaction by the state in the face of a known

- 20 -

Hence, to hold Moore liable for the injuries suffered by James at the hands of a private individual, plaintiff-appellant must demonstrate intentional or reckless, affirmative conduct on the part of Mr. Moore which created the danger, coupled with "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. at 574; see also Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)("a supervisor may be individually liable under § 1983 if he directly participates in a constitutional violation . . . .").

Since plaintiff-appellant does not claim that Moore intentionally created a dangerous situation for James which ultimately led to James's injury, plaintiff-appellant's § 1983 claim must rest on a showing of reckless conduct on the part of Moore. We have said that an "act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk," and that reckless intent is established if the state "actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." Medina v. City and County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992)). Hence, it is clear that recklessness, which involves a type of deliberateness, necessarily excludes conduct which is merely negligent. Uhlrig, 64 F.3d at 573 (citing Collins, 503 U.S. at 127). See also Archuleta v. McShan, 897 F.2d 495, 499 (10th Cir. 1990) (recklessness includes an element

_____

danger is not enough to trigger the obligation; according to DeShaney the state must have limited in some way the liberty of a citizen to act on his own behalf.'" Id. at 995 (quoting Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir. 1993)). Accordingly, we stated that "[i]n the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances." Id.

- 21 -

of deliberateness).

After carefully considering plaintiff-appellant's theory of liability based on Moore's direct participation in creating danger to James, in light of the above strict standards of substantive due process employed under § 1983 for succeeding on a danger creation claim, we agree with the district court that plaintiff-appellant's direct participation claim fails to state a cause of action. While the assaults suffered by James are tragic, we simply do not believe that plaintiff-appellant pled sufficient affirmative acts on the part of Moore which give rise to a claim for deprivation of James's constitutional rights.

First, Moore himself did not personally, affirmatively place James in any danger. Instead, it was Rogers, who is not a defendant in this case, who affirmatively placed James in danger by leaving him to answer the phone. Because Moore, as the charged defendant, did not affirmatively act so as to create or enhance the danger to James, plaintiff-appellant's claim on this theory fails as a matter of law. See Uhlrig, 64 F.3d at 572 (citing Wood, 879 F.2d at 589-90).

Second, even if Rogers' actions could be attributed to Moore, we are persuaded that Moore did not engage in any intentional or reckless affirmative act designed to harm James, a fact which the judge below heavily relied on in dismissing the action. App. at 158. It is apparent that Moore sought to provide protection to James while he used the bathroom after being notified that a molestation had occurred. This conclusion is supported not only by the promise plaintiff-appellant claims Moore made to her that James would not be permitted to

- 22 -

use the bathroom unattended, but also by the fact that the teacher's aide, Diana Rogers, immediately apprehended the assailant during the second assault upon James. Liability under the Due Process Clause may not be based on negligent action by Moore. See County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1718 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); Collins, 503 U.S. at 128 (a substantive due process violation must be more than an ordinary tort to be actionable under § 1983); DeShaney, 489 U.S. at 202 (the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation"). See also Uhlrig, 64 F.3d at 573-574 (recognizing that the "shock the conscience" standard, requiring high level of outrageousness, is employed so that substantive due process claim under § 1983 does not replace state tort law).

Thus, since the amended complaint does not aver that Moore acted affirmatively to create the danger to James, the complaint was properly dismissed as to the theory that Moore directly participated in enhancing the danger to James.

**2**

**Moore's Liability for Failure to Adopt or Implement a
Policy or Training to Prevent Sexual Assaults on the Disabled Victim**

Plaintiff-appellant argues on appeal that a viable claim has been stated that Moore, the principal, with deliberate indifference, failed to adequately train school employees or adopt or implement a policy to prevent sexual assaults like those against James. Brief of Appellant at 10 ("Mr. Moore recklessly and consciously failed to adopt or implement any

policy or training to prevent that specific risk [of sexual assault].")  We must agree that such a viable claim against Moore in his individual capacity was stated.  See Green v. Branson, 108 F.3d 1296, 1302-03 (10th Cir. 1997); Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988).  In reaching this conclusion we follow the instruction of the Supreme Court that the sanction of dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The detailed averments of plaintiff-appellant are thus crucial.  In different portions of the amended complaint the basis of liability for the principal, Mr. Moore, in his individual capacity, was laid out.  It was alleged that Mr. Moore acted "with reckless indifference and malice" toward James "when he specifically failed to take action to prevent James Sutton from being repeatedly molested after being informed by James's mother of the boy's complaints that he was being molested in the restroom while at school . . . ."  App. at 5 (emphasis added).  These allegations followed statements that notice to Moore included notification of James's molestation "in the restroom at the school several times in the past . . . ."  App. at 4 (emphasis added).  It was alleged earlier that James had communicated such molestations on February 16, 1995 (a week before the instant February 23, 1995, molestation), to plaintiff-appellant Kathi Sutton, stating through his sign language that a boy at school had touched him several times in his genital area while he was in the bathroom .

App. at 2.[14]

The complaint also states that James told his mother that the boy who touched him in the bathroom "<u>was a very large boy that was not in his class</u>." <u>Id.</u> (emphasis added). The allegation about the assailant's size must be considered against the backdrop of James's severe disabilities. The complaint alleged that James was 14 years old, that he had severe cerebral palsy, that he was mentally the age of a three to five-year-old child, and that he was totally blind and could not speak. App. at 2. All of this history and the tragic circumstances must be considered in determining the viability of the claim against principal Moore of deliberate indifference and liability for failure to adopt or implement a policy or training to prevent violations of James's rights. <u>See</u> <u>Greason v. Kemp</u>, 891 F.2d 829, 837 (11th Cir. 1990)(considering background of inadequate staff known to supervisor as capable of supporting jury finding of deliberate indifference).

We find the Eleventh Circuit's analysis in <u>Greason</u> instructive here. It dealt with a supervisor's liability for deliberate indifference to a mental patient's critical needs, with a resulting tragic suicide. The supervisor's liability was couched in terms of deliberate indifference. "The same standard of deliberate indifference applies to both inadequate

---

[14]Plaintiff-appellant relies on these allegations as the basis of the defense of her claim in her Opposition to Defendants' Motion to Dismiss. App. at 105 ("Yet despite this knowledge, Mr. Moore recklessly failed to adopt or implement any policy or training to prevent the very risk he acknowledged awareness of in his meeting with Mrs. Sutton."). Thus, the claim for failure to train or adopt a protective policy as to James was spelled out below.

training and inadequate supervision." Id. at 837 n.15. The standard of deliberate indifference laid down in City of Canton v. Harris, 489 U.S. 378, 388 (1989), was followed. Where a superior's failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability. Greason held that while municipal liability like that involved in Canton was not at issue, the analysis of the Supreme Court in Canton was applicable. 891 F.2d at 837. In light of the evidence before it in Greason, the Eleventh Circuit held that denial of summary judgment was proper because a jury could find that the mental health director acted with deliberate indifference to Greason's rights, that a reasonable person in the director's position would have known that his conduct constituted deliberate indifference, and that his conduct was causally related to the grossly inadequate care provided.

Similarly, here we feel that under the framework of plaintiff-appellant Sutton's averments, a viable case for liability of Moore may be proven, establishing the elements of a deliberate indifference claim as in Greason. See Green, 108 F.3d at 1302-03. Moreover, here we must make our determination under the Conley test. Viewed in this light, we cannot say no set of facts could be proven by plaintiff-appellant Sutton to establish a viable due process claim under § 1983.

We are further supported in our conclusion by our opinion in Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988). There a § 1983 claim against the sheriff was made with a charge that he failed to properly supervise his deputies, that he was deliberately indifferent to the

- 26 -

victim's constitutional rights, and that at least three of the sheriff's deputies participated in an assault on the victim. We held that the complaint "sufficiently avers a § 1983 claim against [the sheriff] in his individual capacity for improperly hiring, training, supervising and disciplining his deputies." Id. at 1528; see also Green, 108 F.3d at 1302-03.

We are persuaded that plaintiff-appellant Sutton's allegations cannot be dismissed as inadequate in light of the repeated notification to Moore, as pled, of notice that James, with all his impairments, had been subjected to repeated sexual assaults by the much larger boy. In light of James's severe impairments, and the notification to Moore as alleged of danger to James, and the averment of Moore's failure to take action to prevent James being repeatedly molested, App. at 5, we are persuaded that a viable claim that would "shock the conscience of federal judges" was stated. See Uhlrig, 64 F.3d at 573 (citing Collins, 503 U.S. at 126).

Finally, defendants press a qualified immunity defense against the claim for failure to train subordinates or to implement a policy to protect a victim like James. Moore is entitled to a qualified immunity defense if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The law is clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). Moreover, the law

- 27 -

must be clearly established at the time of the alleged deprivation of the plaintiff's rights. Warner v. Grand County, 57 F.3d 962, 964 (10th Cir. 1995). However, a plaintiff need not present an identical case to show the law was clearly established; instead, a plaintiff must show only that the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Horstkoetter v. Dep't of Pub. Safety, 159 F.3d 1265, 1278 (10th Cir. 1998)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

We are satisfied that a supervisor's liability for failing to train subordinates or to implement a policy to prevent a sexual assault on a severely disabled child like James was clearly established as of February 1995 when the instant assault occurred. Applying the Supreme Court's reasoning in Canton, the Tenth Circuit has clearly established that a supervisor may be individually liable for failing to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights. Meade, 841 F.2d at 1528; McClelland v. Facteau, 610 F.2d 693, 696-98 (10th Cir. 1979). While here the assault was committed by a private actor, the Tenth Circuit has also clearly established that a state official may be liable for the violence committed by private actors under the "danger-creation" doctrine. Uhlrig, 64 F.3d at 572 (citing Medina, 960 F.2d at 1495-99); Graham, 22 F.3d at 995 ("DeShaney . . . leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger."). Therefore, the contours of the right, which plaintiff-appellant asserts was violated, were clearly established

as of February 1995 and the defense of qualified immunity fails.

## IV

## Conclusion

In sum, we **AFFIRM** the dismissal of the claim against the School for the Deaf and Blind, and the claim against Moore in his official capacity since they were not "persons" under § 1983. We **AFFIRM** dismissal of the claim against Moore in his individual capacity with respect to the theory of direct participation in creating the danger to James. We **REVERSE** the district court's dismissal with prejudice of plaintiff-appellant's due process claim for failure to train or adopt a policy to prevent sexual assaults on the disabled victim James, and we **REMAND** the cause for further proceedings on that due process claim and for the district judge to reconsider whether he should exercise supplemental jurisdiction over the state law claims.

**IT IS SO ORDERED.**