F I L E D
United States Court of Appeals
Tenth Circuit

MAY 12 2004

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JEANNE ROBERSON,

       Plaintiff-Appellant,

v.

PINNACOL ASSURANCE, formerly
known as Colorado Compensation
Insurance Authority, formerly known
as State Compensation Insurance
Fund; HUGH MACAULAY, M.D.;
DR. MICHAEL COOPER, M.D.;
MEDICAL OPS MANAGEMENT,
INC.; DOES I THROUGH XX,

       Defendants-Appellees.

No. 03-1182
(D.C. No. 02-D-1309 (OES))
(D. Colo.)

ORDER AND JUDGMENT *

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff/Appellant Jeanne Roberson, appearing pro se, appeals from the district court's order granting defendants' motions to dismiss her claims pursuant to Fed. R. Civ. P. 12(b)(6). Ms. Roberson's complaint included requests for: (1) monetary damages against defendant Pinnacol Assurance for unlawful deprivation of medical benefits previously awarded to her under the Colorado Workers' Compensation Act, Colo. Rev. Stat. § 8-40-101 to § 8-47-209, in violation of the due process clause of the Fourteenth Amendment; (2) a declaratory judgment to "eliminate never-ending enforcement proceedings" required to force Pinnacol to pay benefits as ordered in her worker's compensation case; (3) monetary damages against Pinnacol and the two physician defendants and defendant Medical OPS Management for allegedly conspiring to deprive her of medical benefits; and (4) punitive damages. R., Doc. 1 at 8-10. We conclude that the district court improperly dismissed Ms. Roberson's first claim for relief against Pinnacol. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

## I. Standard of Review

Our review is de novo. *See Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999). A Rule 12(b)(6) dismissal will be upheld

only if, accepting the facts pleaded in the complaint as true, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." *Id.* (quotation omitted).

## II. Relevant Facts

Pinnacol, formerly known as "the Colorado compensation insurance authority," [1] is a statutorily-created insurance company designated as a "political subdivision of the state." Colo. Rev. Stat. § 8-45-101(1) & Historical and Statutory notes. It is "the equivalent of a private insurance company" in operation, providing workers' compensation insurance and employer's liability insurance for Colorado employers. *Simon v. State Comp. Ins. Auth.*, 946 P.2d 1298, 1309 (Colo. 1997); § 8-45-101(5)(f). Thus, participating "[e]mployers pay premiums to the [workers' compensation] Fund, [Pinnacol] receives and processes claims, and then makes disbursements to claimants out of the Fund." *Simon*, 946 P.2d at 1310. "[Pinnacol] clearly was structured so that it would be more responsive and efficient than a state agency. . . ." *Id.*

Ms. Roberson alleges that, after she was injured while employed by Goodwill Industries, a workers' compensation administrative law judge (ALJ)

---

[1]    We refer to Pinnacol and its predecessor as "Pinnacol" for clarity throughout this order even though the Colorado Compensation Insurance Authority was not renamed until July 1, 2002. 2002 Colo. Legis. Serv. Ch. 341 § 1 (West).

found her to be totally and permanently disabled, found Pinnacol to be liable for an "aortic injury" and injuries to her thoracic spine, and ordered Pinnacol to pay for curing and relieving the effects of the injury in 1991. R., Doc. 1 at 3; *id.* Doc. 34, Ex. 1 at 1 (ALJ order dated 5/8/2002). After Pinnacol refused to pay for complications arising from the aortic injury, Ms. Roberson requested an enforcement hearing in 1997. R., Doc. 1 at 4. Consequently, another ALJ ordered Pinnacol to pay for medical care for those complications, including myelopathy, neuropathy, bowel and bladder incontinence, and for monitoring the effects of Ms. Roberson's various medications. *Id.* When Pinnacol ignored bills submitted by three medical providers, Ms. Roberson again requested enforcement of the order. *Id.* at 4-5. While exchanging exhibits at the beginning of the hearing, Pinnacol agreed to pay the bills, so Ms. Roberson cancelled the hearing. *Id.* at 5.

In 2000, Pinnacol asked defendant Medical OPS Management to schedule independent medical examinations for Ms. Roberson with defendants Dr. Macaulay and Dr. Cooper. Both doctors concluded that Ms. Roberson's aortic occlusion was not caused by her work-related accident. *Id.* Based on these two reports, Pinnacol unilaterally discontinued paying all medical benefits associated with the aortic occlusion (90% of Ms. Roberson's medical benefits), *id.*, without

-4-

reopening the 1991 award, and in violation of the 1991 order awarding medical benefits for the injury, *id.* at 6-7.

Ms. Roberson made claims for additional medical benefits to pay for a vitamin B-12 deficiency arising from complications from the aortic injury in 2000, but Pinnacol denied liability on the claims. *Id.* at 6. In 2001, she requested another hearing for enforcement and to impose penalties on Pinnacol for violating the 1991 order, but she later withdrew her request for penalties out of fear that it would open the door for Pinnacol to relitigate all of her previously-awarded benefits. *Id.* at 6-7. At the enforcement hearing held in 2002, an ALJ entered yet another order requiring Pinnacol to pay for the medical costs to treat the vitamin deficiency, and Pinnacol appealed from that order. *Id.* at 7. Ms. Roberson claims that Pinnacol continues to refuse to pay for medical benefits for costs associated with her injuries, and complications from those injuries, that have already been awarded. *See id.*

### III.  The First Claim for Relief

Ms. Roberson alleged federal-question jurisdiction in part under 42 U.S.C. §§ 1983 & 1985(3). *Id.* at 2. In her first claim for relief, Ms. Roberson essentially alleged that, by terminating or discontinuing her medical benefits and refusing to comply with lawful binding orders, Pinnacol has deprived her of property without due process in violation of the Fourteenth Amendment. The

-5-

magistrate judge construed these allegations as a claim brought pursuant to § 1983. [2] *Id.* Doc. 36 at 6. "To state a cause of action under section 1983 for a deprivation of property in violation of the fourteenth amendment, [the plaintiff] must allege that he was deprived of property through state action without due process." *Williams v. Morris*, 697 F.2d 1349, 1350-51 (10th Cir. 1982).

In recommending dismissal of her claims, the magistrate judge observed that Pinnacol has admitted that it is a state actor. R., Doc. 36 at 6. But the magistrate judge concluded that Ms. Roberson failed to state a cause of action against Pinnacol because Pinnacol could be held liable under § 1983 "only when an injury was inflicted through a policy or custom that was implemented by the entity," and only if a "direct causal link [exists] between that policy or custom and the injury alleged," and Ms. Roberson "has alleged nothing in regard to either of these factors." *Id.* at 6-7.

After Ms. Roberson objected to these findings and conclusions, the district court did not specifically adopt the magistrate's analysis for this claim for relief,

---

[2]     Ms. Roberson asserts that, even though she expressly based the district court's jurisdiction over her complaint in part § 1983 and argued below that she had satisfied all of § 1983's requirements, *see* R., Doc. 17 at 2, the district court generally erred by applying § 1983's limitations to her first claim for relief. But Ms. Roberson fails to understand that, to the extent she seeks damages and costs for constitutional deprivations against a state actor, she is in fact seeking relief under § 1983. *See Davis v. Passman*, 442 U.S. 228, 248 (1979) (noting that § 1983 provides the damages remedy for alleged constitutional violations occurring under color of state law).

although the court did adopt the analysis in dismissing her third claim for relief.[3] Instead, the district court dismissed Ms. Roberson's first claim for relief because the court failed "to find anything in her Complaint that adequately sets forth the basis for a cognizable due process claim under either [a procedural or substantive due process] theory." R., Doc. 42 at 7. The court concluded that, because the complaint was "replete with references to hearings, orders, appeals and other procedural processes," she had not been denied procedural due process. *Id.* at 7-8. And because nothing in her complaint demonstrated "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," the court concluded that she had failed to allege a substantive due process violation. *Id.* at 8 (quotation omitted).

**1. The complaint states a claim for deprivation of a constitutional right.** Ms. Roberson argues that the district court (1) erred in holding that her complaint demonstrates she has been afforded sufficient due process and (2) improperly ignored her claim that Pinnacol, as a state actor, unconstitutionally deprived her of a property interest (her right to medical benefits as determined in binding agency orders) by discontinuing her medical benefits without affording her the state-required due process of a pre-deprivation hearing. We agree.

---

[3] The district court entitled its order as one "Affirming and Adopting Magistrate Judge's Recommendations," but nowhere in the order does the court adopt the magistrate judge's whole report or analysis. R., Doc. 42 at 1, 8.

When a state agency has finally ruled that an individual qualifies to receive a benefit, the benefit may not be terminated without due process. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ( "[T]he root requirement of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest") (internal quotations omitted); *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) (holding that a hearing is required before termination of welfare benefits). Here, Ms. Roberson claims that her medical benefits were terminated by Pinnacol, a state actor, without a pre-termination hearing. She contends that, under state law, if Pinnacol desires to terminate or discontinue benefits previously awarded, it must first establish its right to reopen the judgment and obtain a new order terminating the benefits before it unilaterally deprives her of those benefits. Although her pro se arguments are less than artful, she implicitly argues that the fact she has had due process in *obtaining* her medical benefits and in attempting to *enforce* that right in prior hearings is irrelevant to her claim that Pinnacol did not provide her with due process before it terminated her benefits. We agree.

Ms. Roberson's right to pre-deprivation due process comes from the workers' compensation statutory scheme under which she was awarded benefits. Section 8-47-103 of the Colorado Revised Statutes provides that

> [a]ll orders of the director . . . shall be valid and in force and
> prima facie reasonable and lawful until found otherwise in an action

brought for that purpose, pursuant to the provisions of articles 40 to 47 of this title, or until altered or revoked by the director or industrial claim appeals office, as the case may be.

Section 8-43-303 of the Act provides, in part:

(b)  At any time within two years after the date the last medical benefits become due and payable, the director or an [ALJ] may, after notice to all parties, review and reopen an award only as to medical benefits on the ground of an error, a mistake, or a change in condition. . . .  If an award is reopened under this paragraph (b), medical benefits previously ordered may be ended, diminished, maintained, or increased.  No such reopening shall affect the earlier award as to moneys already paid.

(3)  In cases where a claimant is determined to be permanently totally disabled, any such case may be reopened at any time to determine if the claimant has returned to employment. . . .

Colo. Rev. Stat. § 8-43-303(2)(b) & (3).  Further, under section 8-43-401(2)(a), if appeals have been exhausted or no appeals have been taken, "all insurers . . . shall pay benefits within thirty days of when any benefits are due," and if the insurer willfully delays or stops paying benefits, it must pay a penalty to the workers' compensation division, which is deposited in the division's cash fund.  Our review of the workers' compensation statutes indicates that the Colorado legislature has not given an insurer the unilateral right to stop or delay payment of medical benefits absent the procedures for reopening set forth in section 8-4-303(2)(b).  Thus, Pinnacol must abide by the final administrative agency orders awarding benefits unless it reopens a prior award on the basis of specific grounds provided in section 8-43-303.  *See Renz v. Larimer County Sch. Dist.*

*Poudre R-1*, 924 P.2d 1177, 1180 (Colo. Ct. App. 1996) (affirming reopening of prior final award on basis of "applicable statutory criteria"). In *Renz*, the court noted that the ALJ properly allowed Pinnacol's predecessor to offset part of the previously-awarded benefits *after* a hearing, and that "no retroactivity issues are raised" because the ALJ allowed the offset only against "future benefit payments following reopening." *Id.* at 1182. Thus, a workers' compensation benefit recipient in Colorado is entitled to pre-deprivation hearings.[4]

**2. Ms. Roberson stated facts supporting a claim that Pinnacol's direct acts inflicted her constitutional injury.** Even though the district court did not dismiss Ms. Roberson's first action against Pinnacol on the same grounds recommended by the magistrate judge, Pinnacol argues that we should uphold the dismissal on those grounds. We disagree. The magistrate judge held that alleging that Pinnacol terminated Ms. Roberson's benefits without notice and hearing failed to state a claim because its "actions with regard to one claimant . . . do not constitute evidence of the existence of a company-wide policy or custom." R., Doc. 36 at 7. In doing so, the court cited a district court case and *Cannon v. City & County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993), which both

---

[4]  The fact that Ms. Roberson may be able, in future enforcement proceedings, eventually to force Pinnacol to reimburse her for substantive medical costs that it allegedly refused to pay would not preclude a § 1983 award if a jury found that Pinnacol flaunted prior final administrative rulings and violated her rights to due process. *See Wolfenbarger v. Williams,* 774 F.2d 358, 362 (10th Cir. 1985).

-10-

concerned municipality liability for the acts of police officers.  But in its analysis (and in the district court's analysis dismissing the third claim for relief on the same basis), the court confused direct and derivative liability under § 1983.

The Supreme Court fully explained the difference between the two concepts in *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997).  There, the court recognized that *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), requires proof that the municipality itself, and not just a person employed by the municipality, deliberately committed the act causing the injury to the plaintiff through execution of the municipality's "policy" or "custom."  *Brown*, 520 U.S. at 403-04.  But the Court also explained that

> [w]here a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. . . . [P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.
>
> . . . . Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.

*Id.* at 404-05. The Court then gave examples of where a single decision

attributable to a municipality (or similar political entity) gives rise to liability

under § 1983:

> *Owen v. Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d
> 673 (1980), and *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101
> S.Ct. 2748, 69 L.Ed.2d 616 (1981), involved formal decisions of
> municipal legislative bodies. In *Owen,* the city council allegedly
> censured and discharged an employee without a hearing. In *Fact
> Concerts,* the city council canceled a license permitting a concert
> following a dispute over the performance's content. Neither decision
> reflected implementation of a generally applicable rule. But we did
> not question that each decision, duly promulgated by city lawmakers,
> could trigger municipal liability if the decision itself were found to
> be unconstitutional. Because fault and causation were obvious in
> each case, proof that the municipality's decision was unconstitutional
> would suffice to establish that the municipality itself was liable for
> the plaintiff's constitutional injury.
>
> Similarly, *Pembaur v. Cincinnati* [, 475 U.S. 469 (1986),] concerned
> a decision by a county prosecutor, acting as the county's final
> decisionmaker, to direct county deputies to forcibly enter petitioner's
> place of business to serve *capiases* upon third parties. Relying on
> *Owen* and *Newport,* we concluded that a final decisionmaker's
> adoption of a course of action "tailored to a particular situation and
> not intended to control decisions in later situations" may, in some
> circumstances, give rise to municipal liability under § 1983. In
> *Pembaur,* it was not disputed that the prosecutor had specifically
> directed the action resulting in the deprivation of petitioner's rights.
> The conclusion that the decision was that of a final municipal
> decisionmaker and was therefore properly attributable to the
> municipality established municipal liability. No questions of fault or
> causation arose.

*Id.* at 405-06 (citations omitted). The Court then distinguished these direct

liability cases from those derivative or vicarious liability cases in which the

-12-

plaintiff has suffered a deprivation of rights at the hands of a municipal employee. *Id.* at 406-08. The Court cautioned against "blur[ring] the distinction" between the two types of cases. *Id.* at 405.

Ms. Roberson has alleged facts indicating that Pinnacol itself directly violated her constitutional rights through the acts of its authorized agents who carried out Pinnacol's decision to terminate or refuse to pay her benefits. Thus, this case is similar to *Pembaur* and *Owen*. Although we express no opinion regarding the ultimate success of Ms. Roberson's claims, the court must reinstate her § 1983 claims against Pinnacol.

## IV. Third Claim for Relief

We agree with the district court that Ms. Roberson failed to state facts sufficient to support a claim for damages against Pinnacol, the independent medical examiners, and Medical OPS Management for alleged conspiracy to violate her constitutional rights to due process. Although "[a] § 1983 conspiracy claim may arise when a private actor conspires with [a] state actor to deprive a person of a constitutional right under color of state law," *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), "the pleadings must specifically present facts tending to show agreement and concerted action," *Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir. 1994) (quotation omitted), and must demonstrate "a single plan, the essential nature and general scope of which [was] known to each person

who is to be held responsible for its consequences." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quotation omitted). To state that defendant Medical OPS Management scheduled an appointment states no facts indicating its agreement and concerted action to deprive Ms. Roberson of medical benefits by terminating those benefits without reopening her case. And despite the fact that she alleges that both independent medical examiners "falsif[ied] data" in their reports and reached conclusions that Ms. Roberson's aortic occlusion was not caused by her work-related injury, R., Doc. 1 at 5, Ms. Roberson similarly failed to state facts indicating that Pinnacol had a plan to terminate her benefits without reopening the award when it scheduled the IMEs or that the doctors were aware of such a plan and conspired with Pinnacol to reach that end.

Ms. Roberson's attempt on appeal to characterize her conspiracy claims as falling under 42 U.S.C. § 1985(3) is unavailing, as she has not stated facts demonstrating § 1985(3)'s "requirement of class-based, discriminatory animus." *Dixon*, 898 F.2d at 1449 n.6.

## V.  Second and Fourth Claim for Relief

After review of the relevant law as it applies to Ms. Roberson's claims for declaratory relief prohibiting the need for future enforcement actions through workers' compensation proceedings and for punitive damages as a separate claim for relief, we conclude that the district court properly dismissed these claims.

-14-

We agree with the district court that there simply is no federal or constitutional right to be free from a state administrative requirement providing for enforcement hearings as the method of obtaining denied or delayed medical benefits, and no recognized claim for relief from "endless litigation." And even if there was, the federal district courts would be required to abstain from interfering with the ongoing agency proceedings under the *Younger* abstention doctrine. *See Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002).

The judgment of the district court is REVERSED in part and AFFIRMED in part and REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

David M. Ebel
Circuit Judge