Dr. Steven MacARTHUR; Dr. Nathaniel Penn; Michelle Lyman; Helen Valdez; Candace Laws; Paul Keith; Dorothy Keith; Linda Cacapardo; Sue Burton; Amy Terlaak; Alison Dickson; Candace Holiday; Nicole Roberts; Donna Singer; Fred Riggs, Plaintiffs–Appellants,

v.

SAN JUAN COUNTY; San Juan Health Services District; J. Tyron Lewis, Commissioner; Bill Redd, Commissioner; Craig Halls; Mark Maryboy, Commissioner, official capacity only; Reid M. Wood; Cleal Bradford; Roger Atcitty; John Lewis; John Housekeeper; Karen Adams; Patsy Shumway; Dr. James D. Redd; Dr. L. Val Jones; Dr. Manfred R. Nelson; Richard Bailey; San Juan Foundation; Marilee Bailey; Ora Lee Black; Gary Holladay; Lori Wallace, also known as Laurie Walker; Farmer's/Truck Insurance; St. Paul's Insurance; Carla Grimshaw; Gloria Yanito; Julie Bronson; R. Dennis Ickes; Laurie Schafer, Defendants–Appellees.

No. 01–4001.

United States Court of Appeals, Tenth Circuit.

Oct. 7, 2002.

---

Susan Rose of Sandy, UT, for the Plaintiffs–Appellants.

Carolyn Cox (Blaine J. Benard with her on the brief) of Holme Roberts & Owen L.L.P., Salt Lake City, UT, for Defendants–Appellees San Juan Health Services District, Reid Wood, Roger Atcitty, John Lewis, John Housekeeper, Karen Adams, Patsy Shumway, Gary Holliday, and Lauren Schafer.

Jesse C. Trentadue of Suitter Axland, Salt Lake City, UT, for Defendants–Appellees San Juan County, J. Tyron Lewis, Mark Maryboy, Bill Redd, Craig Halls, and Richard Bailey.

Kyle M. Finch of Miller, Stratvert & Torgerson, P.A., Farmington, New Mexico, submitted a brief for Defendant–Appellee Farmer's/Truck Insurance.

Robert R. Harrison and David W. Slagle, of Snow, Christensen & Martineau, Salt Lake City, UT, submitted a brief for Defendants–Appellees Cleal Bradford, Dr. James Redd, Dr. L. Val Jones, Dr. Manfred Nelson, Marilee Bailey, Ora Lee Black, Lori Wallace, Carla Grimshaw, Gloria Yanito, and Julie Bronson.

R. Dennis Ickes, pro se.

Before EBEL, McKAY, and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

Key to our determination of this appeal is the question whether the courts of the Navajo Nation may exercise jurisdiction over a case brought by private individuals against a Utah county alleging violations of Navajo law. Contrary to the district court's ruling, we conclude that resolution of this question lies in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (defining the scope of tribes' inherent sovereignty), rather than in the doctrine of state sovereign immunity.

## I

The parties bring to us a procedural quagmire marked by a profound lack of clarity—at times approaching confusion—in their litigation before the Navajo Nation district court and their pleadings before the federal district court below. That pattern continues here.

Rather than including a complete statement of relevant facts as required by Fed. R.App. P. 28, appellants' opening brief incorporates facts as stated in a Navajo Nation judicial record. Appellants fail to comply with Fed. R.App. P. 30(a)(1)(B), which requires the filing of an appendix to the briefs including "relevant portions of the pleadings." This being an appeal from a Fed.R.Civ.P. 12(b)(6) dismissal for the complaint's failure to state a claim upon which relief may be granted, Rule 30(a)(1)(B) requires, at a minimum, inclu-

sion in the appendix of the complaint at issue. *See* 10th Cir. R. 30.1(A)(1) (stating that the appendix to the briefs must be "sufficient for considering and deciding the issues on appeal"). Were it not for *appellees'* submission of the complaint, we would be inclined to affirm the district court's dismissal on this basis alone. *See* 10th Cir. R. 30.1(A)(3) (stating that this court is not obliged to "remedy any failure of counsel to provide an adequate appendix").

As best as we can tell, the facts are as follows.

## A

Montezuma Creek Clinic is located within the boundaries of the Navajo Nation and was, during relevant times, operated by the San Juan Health Service District ("Health District")—a special service district organized by San Juan County, Utah ("County")—under contract with the federal Indian Health Service ("IHS") to provide health care to members of the Navajo community. The clinic and land upon which it is located was purchased by the State of Utah as part of the Utah Navajo Trust Fund.

In April 1999, Fred Riggs, Donna Singer, and Alison Dickson, all of whom were employed at the clinic, sued the Health District and County, among others,[1] in Navajo Nation district court for, among other things, alleged violations of the Navajo Preference in Employment Act ("NPEA"), Nation Code tit. 15, §§ 601–609.[2] The

---

1. Sued in the Navajo court action were the Health District; chairman of the district governance board Roger Atcitty; former governance board member John Lewis; governance board members Karen Adams and Patsy Shumway; and district director of patient care Laurie Shafer. (*See* 2 Appellants' App. at 176 n. 5.) Also sued were San Juan County, Utah; county commissioners J. Tyron Lewis, Mark Maryboy, and Bill Redd; county attorney Craig Halls; and county administrator Richard Bailey. (*See* 2 *id.* at 176

n. 4.) Except for Shumway and Maryboy, who were sued in their official capacities only, the individual defendants were sued in both their official and personal capacities.

2. Appellants' claim that "[t]hey brought only Navajo law claims before the Navajo tribunal" is incorrect. (*See* Health District Appellees' App. at 247 (Navajo court complaint)) (setting forth a claim entitled "The Right to Free Speech as Protected by the Navajo Nation, the United Nations, and the United

NPEA, which was enacted by the Navajo Nation, requires employers to "[g]ive preference in employment to Navajos," *id.* § 604(A)(1), and to file with the Office of Navajo Labor Relations a written affirmative-action plan, § 604(A)(2).

In pretrial proceedings, the Navajo court concluded that Riggs, Singer, and Dickson demonstrated a substantial likelihood of success on the merits of their NPEA claims and entered a preliminary injunction in their favor. The Navajo court was troubled by what it perceived as a sharp drop in visits to the clinic by diabetic patients. In the court's view, "The reason these patients have not been coming in for life critical medical care is due to San Juan Health Service District's billing of IHS eligible patients, making them believe they must pay for medical services before receiving medical attention." (1 Appellants' App. at 77.) Under the preliminary injunction, the County and Health District were required to reinstate Singer and Riggs to their prior positions at the clinic; to give Dickson full-time employment status; to compensate Singer, Riggs, and Dickson for their lost income; to expunge Singer's and Riggs's personnel files; and to pay attorney's fees. Moreover, the Navajo court prohibited the County and Health District from:

> Eliminating Emergency Medical Technician services and coverage within the territorial jurisdiction of the Navajo Nation in service to the local Navajo and other Native American population for or

on behalf of the Montezuma Creek Clinic; and, Interfering with the laboratory services to the Montezuma Creek Clinic; and, Interfering with the pharmaceutical services provided to the Montezuma Creek Clinic, and immediate payment of all current and past due billings; and, Interfering with any form of patient care, by, among any other matter or things, billing IHS patients; and Interfering or harassing Ms. Singer as the manager of the Montezuma Creek Clinic. . . .

(1 *id.* at 85–86.) [3]

In its order granting a preliminary injunction, the Navajo court found that the defendants had engaged in a pattern of bad faith conduct toward the court, had wasted judicial resources, had engaged in "repeated misrepresentations of fact and law," had engaged in evidence spoliation, had intimidated and tampered with witnesses, had obstructed testimony, and had engaged in the sandbagging of evidence. (1 *id.* at 80.) In the Navajo court's view, the defendants had made frivolous claims against Navajo plaintiffs and subjected them "to a trial by tabloid." (1 *id.* at 81.) Seizing on these conclusions, Riggs, Singer, and Dickson modified their complaint to add as defendants the clinic's insurer, Truck Insurance Exchange ("Truck Insurance"), and its attorney, R. Dennis Ickes. On May 3, 2000, the Navajo court took the extraordinary step of holding that Truck Insurance and Ickes should be bound by

---

States"); *id.* at 248 ("Freedom to Assemble as Protected by the Navajo Nation, the United Nations, and the United States."); *id.* at 249 ("The right to Due Process protected by the Navajo Nation, United Nations, and the United States."); *id.* at 255 ("The Right of Equal Protection Specifically Protected by the Navajo Nation, the United Nations, [and] the United States.").

**3.** The Navajo court also held "[t]hat in the event that the defendants fail to obey the

Order of this Court, commencing the [fourth] day of March, 2000, the defendants shall be fined at the rate of $10,000.00 . . . per day, for each and every day the Order of this Court is not carried out in its entirety." (1 Appellants' App. at 104.) Moreover, the court ordered "[t]hat each and every personal defendant and defendants [*sic*] counsel will pay $1000 per day of the $10,000 daily fine beginning March 2, 2000, [*sic*] from their own personal assets." (*Id.*)

the preliminary injunction. The court also granted Riggs, Singer, and Dickson leave to seek enforcement of the preliminary injunction in state or federal court "pursuant to principles of comity and applicable law." (1 *id.* at 106.)

**B**

Riggs, Singer, Dickson, and twelve other individuals filed a complaint in United States district court against (1) the County, Health District, and a number of County and Health District officials ("County and Health District defendants"); (2) Truck Insurance; and (3) Ickes. The complaint listed various causes of action: discrimination and denial of equal protection; denial of free speech and association; denial of due process; antitrust and racketeering violations; fraud, conversion, and theft; and invasion of privacy and defamation. Their complaint also sought enforcement of the Navajo court preliminary injunction and "a declaratory judgment that the Preliminary Injunction Order designed to protect the welfare of the Navajo Nation was issued within the sound jurisdiction of the Navajo Nation District Court and is authoritative over the defendants and the political subdivision" (Health District's Supplemental App. ("H.D.App.") at 46). The complaint asserted: "Pursuant to *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) [the] Navajo Nation District Court ... has the right to protect the Navajo Patients' health and welfare, contractual rights of the Navajo people, and the civil rights of all those who are within the Navajo Nation boundaries and seek [the] Court's assistance." (H.D.App. at 48.)

Ruling on a motion to dismiss, the district court held that County and Health District defendants were entitled to sovereign immunity in the Navajo court. Reasoned the district court:

> [T]ribal courts historically did not possess and therefore have not retained sovereign powers over states. Therefore, absent a state's express waiver of immunity, a state cannot be sued in tribal court.... Consequently, political subdivisions of the State of Utah, as defined by Utah law, are immune from suit in tribal courts because the State of Utah has not waived the common law immunity of its political subdivisions from suit in tribal courts.

(2 Appellants' App. at 185.) In a separate decision, the district court dismissed plaintiffs' claim as against Truck Insurance and Ickes. Applying *Montana v. United States*, the district court held that the Navajo court lacked subject-matter jurisdiction over them.

Appellants seek review of the district court decisions.[4]

**C**

We review the district court's dismissal of appellants' claims under Rule 12(b)(6) for failure to state a claim de novo. *Sut-*

---

4. The district court did not act on appellants' other claims, and consequently, this court originally lacked jurisdiction over this appeal. Title 28 U.S.C. § 1291 grants the courts of appeal "jurisdiction of appeals from all final decisions of the district courts of the United States." Ordinarily, an appealable final judgment is one that terminates "all matters as to all parties and causes of action." *D & H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1444 (10th Cir.1984) (en banc).

While this matter was pending, however, the district court exercised its discretion under Fed.R.Civ.P. 54(b) to direct entry of final judgment on plaintiffs' Navajo preliminary injunction claim. As a result, this court now has jurisdiction over this appeal under § 1291. *See Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 583–84, 100 S.Ct. 800, 63 L.Ed.2d 36 (1980).

*ton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). At this stage of the litigation, we accept all well-pleaded allegations in the complaint as true and will sustain the district court's Rule 12(b)(6) dismissal only if it is clear beyond doubt that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id.* Our role in this context "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quotation omitted). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In deciding a Rule 12(b)(6) motion, a federal court generally "should not look beyond the confines of the complaint itself." *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 960 (10th Cir. 2001), *cert. granted,* 534 U.S. 1161, 122 S.Ct. 1171, 152 L.Ed.2d 115 (2002). There are two exceptions to this rule. First, the district court may consider "mere argument" contained in the parties' memoranda concerning a motion to dismiss. *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 585 F.2d 454, 457 (10th Cir.1978). Second, "[i]t is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Howsam,* 261 F.3d at 961 (quotation omitted).

As stated above, appellants' failure to submit a copy of their complaint to this court on appeal is rendered less harmful by appellees' submission of that crucial document. However, the district court docket entries indicate that appellants filed attachments and an addendum to their complaint on July 26, 2000. We are at a loss as to the contents of these filings. Although it seems clear that the district court relied on facts beyond those alleged in the body of the complaint, there is no way to know from the record before us whether these factual allegations are reflected in the attachments to the complaint. Because appellants do not challenge the district court's decisions on grounds that the court exceeded the proper scope of Rule 12(b)(6) review, we defer to the district court's statements of factual allegations.

## II

We first consider whether the district court properly dismissed appellants' claims against Truck Insurance and Ickes.

### A

Long before the arrival of Europeans on this continent, tribes were self-governing political communities. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). As such, the tribes possessed the full attributes of sovereignty, which included "the inherent power to prescribe laws for their members and to punish infractions of those laws." *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). Although "[t]heir incorporation within the territory of the United States, and their acceptance of its protection necessarily divested them of some aspects of the sovereignty which they had previously exercised," *id.,* this divestiture was not absolute. Today, tribes retain sovereignty of a

unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status.

*Id.*

As Felix Cohen observed in his seminal work on the subject of federal Indian law, "[T]hose powers which are lawfully vested in an Indian tribe are not, in general, delegated powers granted by express acts of Congress, but rather inherent powers of a limited sovereignty which has never been extinguished." Felix S. Cohen, *Handbook of Federal Indian Law* 122 (1941); *see Wheeler*, 435 U.S. at 322, 98 S.Ct. 1079. Contrary to County defendants' assertion on appeal (*see* County Appellees' Br. at 20), tribes are not subordinate to the states, *see Washington v. Confederated Tribes*, 447 U.S. 134, 154, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), and certainly not to counties.[5]

The leading case defining the scope of tribal inherent civil authority is *Montana v. United States*. *Montana* articulates the general rule that "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." 450 U.S. at 564, 101 S.Ct. 1245. Generally, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 565., 101 S.Ct. 1245 But there may be cases in which inherent civil authority will extend to the conduct of non-Indians on reserva-

tions. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* Second, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566, 101 S.Ct. 1245.

In a pair of subsequent cases, the Supreme Court applied *Montana* to address the scope of inherent civil *adjudicative* authority as well, holding that "[a]s to nonmembers ..., a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate v. A–1 Contractors*, 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); *Nevada v. Hicks*, 533 U.S. 353, 357–58, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). In *Hicks*, the Court acknowledged that this "formulation leaves open the question whether a tribe's adjudicative jurisdiction over nonmember defendants *equals* its legislative jurisdiction." 533 U.S. at 358, 121 S.Ct. 2304.

**B**

In evaluating appellants' declaratory judgment claim against Truck Insurance, the district court stated that in April 1999,

there was in effect a Comprehensive Hospital Liability Policy issued by Truck, which, among other things, covered the Montezuma Creek Clinic, which was operated by the San Juan Health Services District.... Consequently, Truck retained Mr. Ickes to represent

---

5. We must reject County appellees' assertion "that the natural dominion of States and their political subdivisions over tribal governments was clearly established before the United

States *Constitution* came into being and that there has been nothing post *Constitution* to change that fact" (County appellees' Br. at 20).

the District and related defendants ... in the Tribal Court action. Because, there were coverage issues as to many of the claims brought by Plaintiffs in the Tribal Court proceedings, however, Mr. Ickes was retained solely to represent the interests of Truck's insureds. Mr. Ickes was not retained to, and has not, represented Truck at any time pertinent to this action.

(2 Appellants' App. at 198.) In their opening brief, appellants neither take issue with the district court's statement of these allegations nor contend that Truck Insurance is a member of the Navajo Nation such that Montana's presumption against tribal authority would not apply. Rather, they contend that Truck Insurance falls within Montana's consensual relationship exception. According to appellants,

> Truck's contract for liability insurance was an inherent aspect attaching to each Navajo patient's contract for services with the clinic. But for the Navajo patients, Truck would not have had a contract with the defendants for the clinic. Truck's contract was an inherent aspect of Attorney Ickes' representation of the defendants. Attorney Ickes kept Truck informed.

(Appellants' Br. at 28.)

■ We reject appellants' argument. Under Montana's consensual relationship exception, the relationship must be one between the nonmember and *"the tribe or its members."* 450 U.S. at 564, 101 S.Ct. 1245. Here, Truck Insurance's contractual relationship was with the *clinic,* another nonmember. Thus, the Navajo Nation's exertion of authority over Truck Insurance is too attenuated to fall under Montana's consensual relationship exception. *See At-*

*kinson Trading Co. v. Shirley,* 532 U.S. 645, 656, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001) ("Montana's consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself.").

■ We also reject appellants' contention that their declaratory judgment claim against Ickes, who is not a member of the Navajo Nation, was improperly dismissed. Appellants claim that the Navajo Nation may regulate Ickes's activity because he entered into a consensual relationship with the tribe—i.e., he became a member of the Navajo Nation Bar Association. We agree that Ickes's membership in the Navajo Nation Bar Association and his practice before the Navajo district court constitute a consensual relationship with the Navajo Nation. However, our *Montana* inquiry does not end with this determination. As was the case with respect to Truck Insurance, the requisite nexus between the consensual relationship and the exertion of tribal authority is missing.

By enrolling as a member of the Navajo Nation Bar Association, Ickes agreed to follow the American Bar Association's Model Rules of Professional Conduct, which have been adopted by the Navajo Nation Supreme Court. Rule 8.5(a) of the Model Rules provides, "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction...." In our judgment, the power to discipline an attorney for alleged misconduct in court is distinct from the power to join the attorney as a defendant with the clients he is representing before that court.[6] As the Supreme Court observed in

---

**6.** *See Garcia v. Rodey, Dickason, Sloan, Akin & Robb,* 106 N.M. 757, 750 P.2d 118, 122 (1988) (collecting cases, and stating that "[a]n attorney has no duty ... to protect the interests of a non-client adverse party for the obvi-

ous reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client").

*Atkinson,* the rule is not "in for a penny, in for a Pound." 532 U.S. at 656, 121 S.Ct. 1825 (quotation omitted).

We are also unpersuaded that *Montana's* self-government exception should apply with respect to Ickes. This exception "grants Indian tribes nothing beyond what is necessary to protect tribal self-government or to control internal relations." *Id.* at 658–59, 121 S.Ct. 1825 (quotations omitted). Surely, the Navajo Nation's interest in regulating attorney conduct is great. *See Goldfarb v. Va. State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). But it is a long leap, and one we are unwilling to take, to suggest that the action taken by the Navajo court in this case was necessary to protect Navajo self-government or control its internal relations. If warranted, the Navajo Nation may protect its political integrity through other means, such as "the imposition of disbarment, suspension or reprimand of the offending attorney[ ]." *Garcia v. Rodey, Dickason, Sloan, Akin & Robb,* 106 N.M. 757, 750 P.2d 118, 123 (N.M.1988).

## C

Appellants contend that the Navajo court's actions respecting Ickes are sanctioned by federal law, namely 25 U.S.C. § 1302. This argument is utterly devoid of any merit. Section 1302 is an express *divestiture* of tribal authority, providing, among other things, that no Indian tribe may "deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(7); *see also Santa Clara Pueblo v.*

*Martinez,* 436 U.S. 49, 57, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (stating that in § 1302, "Congress acted to ... impos[e] certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment").

## D

In contrast to their claim seeking a declaratory judgment, appellants' claim for enforcement of the Navajo court's preliminary injunction with respect to Truck Insurance and Ickes raises important questions concerning the proper role of federal courts.[7] Although a tribal court *defendant* may bring a federal cause of action for an injunction where the basis of the claim is assertion of "a right to be protected against an unlawful exercise of Tribal Court judicial power," *Nat'l Farmers,* 471 U.S. at 851, 852, 105 S.Ct. 2447, this right to be free from tribal court interference does not necessarily support a federal claim seeking enforcement of a tribal decree. Although the sovereign powers of the Navajo Nation are held "only at the sufferance of Congress," *Wheeler,* 435 U.S. at 323, 98 S.Ct. 1079, these powers are rooted in Navajo, not federal, law. "Indian tribes are neither states, nor part of the federal government, nor subdivisions of either. Rather, they are sovereign political entities possessed of sovereign authority not derived from the United States, which they predate." *NLRB v. Pueblo of San Juan,* 276 F.3d 1186, 1192 (10th Cir.2002) (en banc) (footnote omitted). To the extent appellants' complaint anticipates a defense arising under federal law, it runs up against the well-pleaded complaint rule.

---

7. Because we recognize a federal right to be free from tribal court interference, it stands to reason that an action for a mere declaration that a tribal court defendant has no such right might be permitted as well. *See* Fed.R.Civ.P. 57; 10B Charles Alan Wright, Arthur R. Mil-

ler & Mary Kay Kane, *Federal Practice & Procedure* § 2767, at 650 (3d ed.1998). We do not consider, nor do we decide, whether such relief is available at this interlocutory stage of the parties' tribal court litigation.

*See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ Appellants nonetheless seek enforcement of the Navajo court injunction under Full Faith and Credit Clause of the Constitution or, in the alternative, comity principles. Under the Full Faith and Credit Clause,

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1. Full faith and credit principles are also in place as a matter of statute:

Such Acts, records, and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. According to appellants, tribes historically have been viewed as territories of the United States. In fact, Supreme Court cases point in opposing directions. *Compare United States ex rel. Mackey v. Coxe,* 59 U.S. (18 How.) 100, 103, 15 L.Ed. 299 (1855) (holding that the Cherokee Nation was a "territory" for purposes of a federal letters of administration law), *with New York ex rel. Kopel v. Bingham,* 211 U.S. 468, 474–75, 29 S.Ct. 190, 53 L.Ed. 286 (1909) (citing, with approval, *Ex Parte Morgan,* 20 F. 298, 305 (W.D.Ark. 1883), which held that the Cherokee Nation was not a "territory" within the meaning of the federal extradition statute). *See generally Wilson v. Marchington,* 127 F.3d 805, 808–09 (9th Cir.1997) (discussing the issue at length and ultimately holding that neither the Full Faith and Credit

Clause nor 28 U.S.C. § 1738 is applicable to tribal judgments). We need not address this issue because appellants admit that they

did not argue full faith and credit in the Federal [district] Court, but upon further consideration of the full pervasiveness of the United States in Tribal Court systems, and given the need for preliminary injunctions in health and public safety emergencies, the Plaintiffs now argue full faith and credit is appropriate for exclusively tribal claims under the facts of this case.

(Appellants' Br. at 36 n. 14.) As a general rule, this court will not consider an issue on appeal that was not pressed below, *Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992), and we choose not to do so today. We thus proceed with the assumption that the Navajo Nation injunction is enforceable in federal court as a matter of comity.

We are unwilling to enforce judgments of tribal courts acting beyond their authority, especially where defendants have a federal right "to be protected against an unlawful exercise of Tribal Court judicial power," *Nat'l Farmers,* 471 U.S. at 851, 105 S.Ct. 2447; *see Wilson,* 127 F.3d at 810 (holding that "federal courts must neither recognize nor enforce tribal judgments if: (1) the tribal court did not have both personal and subject matter jurisdiction; or (2) the defendant was not afforded due process of law"). Therefore, given our earlier conclusion that the Navajo court lacked subject-matter jurisdiction over Truck Insurance and Ickes, we must affirm the district court's dismissal of appellants' enforcement claim as against those parties.

### III

We proceed to review the district court's dismissal of appellants' claims against County and Health District defendants.

## A

In its memorandum decision and order, the district court ruled that the Navajo court suit against County and Health District defendants was barred by the doctrine of sovereign immunity. The Navajo court's exercise of jurisdiction over these defendants was, in the district court's view, "nonsensical" and "ludicrous." (2 Appellants' App. at 190.) The district court based its decision on constitutional sovereign-immunity principles, stressing that the Constitution never would have been ratified had the states been stripped of their sovereign authority " 'except as expressly provided by the Constitution itself.' " (2 *id.* at 185 (quoting *Alden v. Maine*, 527 U.S. 706, 727, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)).) As exemplified by such decisions as *Alden* and *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the federal doctrine of sovereign immunity holds that the federal government may not, as a general matter, infringe the states' immunity from private suit.

Appellants contend that the district court's analysis of their claims against County and Health District defendants should have proceeded under *Montana* and subsequent cases defining tribal inherent sovereignty. Had these principles been applied, say appellants, dismissal would have been improper.

## B

We begin our analysis with the acknowledgment that federal sovereign immunity and *Montana* are distinct legal doctrines. On a practical level, however, both *Montana* and sovereign immunity may potentially divest the Navajo court of the power to adjudicate the parties' suit.[8]

The district court's reliance on federal sovereign immunity misunderstands the doctrine as defined by the Supreme Court. *See Nevada v. Hicks*, 533 U.S. 353, 373–74, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001); *Nevada v. Hall*, 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) ("The doctrine of sovereign immunity is an amalgam of two quite different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign."). Nonetheless, at this point in the analysis it would be premature to decide the sovereign immunity question because there remains a threshold question of the tribe's jurisdiction under *Montana.*

## C

The threshold question in our review of the Navajo court judgment is whether the Navajo Nation's decision to exercise adjudicative power over County and Health District defendants passes muster under *Montana.* If, and only if, appellants overcome the heavy presumption *Montana* establishes against the existence of tribal jurisdiction will a federal court have occasion to address the sovereign immunity issue at all.

Our judgment is guided by *Nevada v. Hicks*, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) decided by the Supreme Court after the district court's dismissal in the present case. The primary issue in *Hicks* was whether a tribal court possessed "jurisdiction to adjudicate the

---

8. We note that County and Health District defendants do *not* assert sovereign immunity from suit in federal court. *Cf. Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890) (holding that Eleventh Amendment immunity does not extend to counties, cities, or municipal corporations); *cf. also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that Eleventh Amendment immunity does not extend to local school districts). Moreover, it must be remembered that the County and Health District asserted their sovereign immunity defense in *Navajo court*. We sit in review of that judgment.

alleged tortious conduct of state wardens executing a search warrant for evidence of an off-reservation crime." *Id.* at 357, 121 S.Ct. 2304. The Court concluded that the tribal court did not have jurisdiction, applying the two *Montana* principles of Indian law that we have already discussed: first, that " '[a]s to nonmembers ... a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction,' " *id.* at 357–58, 121 S.Ct. 2304 (quoting *Strate,* 520 U.S. at 453, 117 S.Ct. 1404); and second, that "[w]here nonmembers are concerned, the 'exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation,' " *id.* at 359, 121 S.Ct. 2304 (quoting *Montana,* 450 U.S. at 564, 101 S.Ct. 1245) (emphasis removed). Although the Court did not answer the question of whether a tribe's adjudicative jurisdiction over nonmembers equals its regulatory jurisdiction, the Court made clear that without regulatory jurisdiction under *Montana,* a tribe is definitively without adjudicative jurisdiction. *Id.* at 358, 121 S.Ct. 2304.

■ *Hicks* expressly acknowledges that *Montana* and sovereign immunity are distinct doctrines. Moreover, *Hicks* rejects the view that "immunity defenses should be considered in reviewing tribal court jurisdiction," *id.* at 373, 121 S.Ct. 2304 (quotation omitted), and provides two reasons for this conclusion:

> The first is that it is not true. There is no authority whatever for the proposition that absolute—and qualified—im-

munity defenses pertain to the court's jurisdiction—much less to the tribe's *regulatory* jurisdiction, which is what is at issue here. (If they did pertain to the court's jurisdiction, they would presumably be nonwaivable. *Cf. Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). And the second problem is, that without *first* determining whether the tribe has regulatory jurisdiction, it is impossible to know which "immunity defenses" the federal court is supposed to consider.

*Id.* at 373–74, 121 S.Ct. 2304 (parallel citations omitted). *Hicks* thus stands for the proposition that *Montana* analysis should proceed before considering immunity defenses.[9] In sum, we conclude that the district court should have performed a *Montana* analysis before reaching the sovereign immunity question.

**D**

Although the district court did not conduct a proper analysis under *Montana,* we are nonetheless free to affirm the district court's dismissal on any grounds for which there is a record sufficient to permit conclusions of law, provided the litigants have had a fair opportunity to develop the record. *See Seibert v. Oklahoma ex rel. Univ. of Okla. Health Scis. Ctr.,* 867 F.2d 591, 597 (10th Cir.1989). We decline to do so, however, and instead vacate the court's dismissal of appellants' claim against County and Health District defendants, and remand the matter for further proceedings. In addition to the fact that County and Health District defendants did not brief the *Montana* issues on appeal,[10]

---

9. In another telling passage, the Court in *Hicks* stressed the narrowness of its holding: "We do not say state officers cannot be regulated; we say they cannot be regulated in the performance of their law-enforcement duties. Action unrelated to that is potentially subject to tribal control depending on the outcome of

*Montana* analysis." *Id.* at 373, 121 S.Ct. 2304.

10. (*Cf.* County Appellees' Br. at 3 ("Because the District Court never ruled on the issue of subject matter jurisdiction with respect to San Juan County Appellees, it would be inappro-

we have kept in mind the limited nature of our inquiry when assessing Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. "The granting of a motion to dismiss must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Pelt v. Utah,* 104 F.3d 1534, 1540 (10th Cir.1996) (quotation omitted).

Appellants' position has been that the district court relied on the wrong doctrine in dismissing its claims against County and Health District defendants. We do not intend to suggest an outcome on remand. However, as the Supreme Court has observed, "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." *Nat'l Farmers,* 471 U.S. at 855–56, 105 S.Ct. 2447 (footnote omitted).

### IV

The district court's dismissal of appellants' claim against Ickes and Truck Insurance is **AFFIRMED.** Dismissal of appellants' claim against County and Health District defendants is **VACATED,** and the matter is **REMANDED** for further proceedings consistent with this opinion. All outstanding motions are **DENIED.**

priate for this Court to address that issue on this limited appeal."); Health District Appellees' Br. at 3 (stating that the sole issue on appeal was "[w]hether the district court erred in dismissing plaintiffs' claim seeking enforcement of the tribal court orders as against the Health District defendants on the grounds that the Health District defendants are immune from suit in the tribal court under the doctrine of sovereign immunity").)