McCONNELL,
Circuit Judge, concurring in the judgment.
I agree with the majority that the district court improperly gave preclusive effect to the tribal court’s judgment. I would reach this conclusion, however, on a much narrower ground. Instead of deciding that the court system of the Santa Ana Pueblo fails to provide a full and fair opportunity to litigate, I would reverse on the ground that the tribal court lacked jurisdiction to hear federal civil rights claims brought under 42 U.S.C. § 1981 and § 1985. We may consider the jurisdiction of the tribal court sm sponte, and in this case we have strong reasons to do so.
This case is essentially a civil rights action under 42 U.S.C. §§ 1981 and 1985. In Nevada v. Hicks, 533 U.S. 353, 366-69, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), the Supreme Court established that a tribal court cannot entertain claims under 42 U.S.C. § 1983, and I see no reason to distinguish the § 1983 claim in Hicks from the Burrells’ § 1981 and § 1985 claims. (Counsel for the Pueblo essentially conceded as much at oral argument.) It follows that the tribal court was not a “court of competent jurisdiction,” and its ruling is therefore entitled neither to deference nor to preclusive effect. See Iowa Mut. Ins. Co. v. La Plante, 480 U.S. 9, 19, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (“Unless a federal court determines that the Tribal Court lacked jurisdiction, however, proper deference to the tribal court system precludes relitigation of issues raised by the La-Plantes’ bad-faith claim and resolved in the Tribal Courts.”); Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (noting that collateral estoppel requires a decision by a “court of competent jurisdiction”); Hilton v. Guyot, 159 U.S. 113, 202-03, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (requiring the same for comity). As the majority notes, the Bur-rells challenged the jurisdiction of the tribal court in their first federal suit but have not “squarely raise[d] the issue in this case.” Op. of Briscoe, J., at 17 n.6. Two questions remain: whether we may raise the jurisdiction of the tribal court sua sponte, and whether we should.
There is no controlling precedent on raising the jurisdiction of the tribal court sua sponte, but the best conclusion is that we may do so. As a general matter, this Court disfavors enforcing judgments of tribal courts that act without jurisdiction. MacArthur v. San Juan County, 309 F.3d 1216, 1225 (10th Cir.2002) (“ We are unwilling to enforce judgments of tribal courts acting beyond their authority, especially where' defendants have a federal right ‘to be protected against an unlawful exercise of Tribal Court judicial power.’ ”) (quoting Nat’l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 851, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)); see also Wilson v. Marchington, 127 F.3d 805, 811 (9th Cir. 1997) (considering it not “discretionary” but rather “a threshold inquiry” whether the tribal court had subject-matter jurisdiction).
*1176 This Court has not yet decided whether a tribal court’s judgment is entitled to preclusive effect under the Full Faith and Credit Clause, U.S. Const. art. IV, § 1; 28 U.S.C. § 1738, or as a matter of comity. MacArthur, 309 F.3d at 1225; cf. Marchington, 127 F.3d at 807 (concluding “that the principles of comity, not full faith and credit, govern whether a district court should recognize and enforce a tribal court judgment”). The majority uses both approaches. Either way, it is appropriate for a federal court to consider whether the court that rendered the underlying judgment had jurisdiction to do so.
It is well established that a court may raise the issue of preclusion on Its own motion, in appropriate cases. Arizona v. California, 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (allowing that res judicata might be raised ana aponte in “special circumstances”); Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 230, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (noting “that trial courts may in appropriate cases raise the res judicata bar on their own motion”); Scherer v. Equitable Life Assurance Soc’y, 347 F.3d 394, 398 n. 4 (2d Cir.2002) (noting that “a court is free to raise [res judicata] sua aponte, even if the parties have seemingly waived it,” but also noting that a court has “no obligation to” and may even have good reasons not to raise it); Mowbray v. Cameron County, Texas, 274 F.3d 269, 281-82 (5th Cir.2001) (upholding a district court’s. dismissal sua aponte on res judicata grounds); see also Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 Federal Practice and Procedure § 4405 (2d ed. 1990 & Supp.2005) (“[I]t has become increasingly common to raise the question of preclusion on the court’s own motion.”).
It would seem to follow that a court may consider preclusion sua aponte to retain federal jurisdiction. Without a discretionary power to raise a tribal court’s jurisdiction sua aponte, the federal court could be in the awkward position of acceding to the judgment of a court that self-evidently lacked jurisdiction. Justice requires not only recognizing the judgments of courts of competent jurisdiction but also refusing to recognize a judgment that manifestly lacks legal validity.
If we are dealing here with comity, rather than res judicata or collateral estoppel, the argument is even stronger. “[I]nquiry into jurisdiction is a part of comity analysis,” John v. Baker, 30 P.3d 68, 72 n. 14 (Alaska 2001), and a court “need not recognize a judgment of the court of a foreign state if ... the court that rendered the judgment did not have jurisdiction of the subject matter of the action.” Réstate-me,nt (Third,) of Foreign Relations Lair § 482(2)(a) (1987) (including case citations to comity analysis of tribal-court judgments). Put simply, lack of jurisdiction in a foreign court is a “universally accepted ground for refusing to recognize or enforce the judgment of a foreign state.” Recognition and Enforcement of Foreign Judgments: Analysis and Proposed Federal Statute § 6 cmt. a (Apr. 11, 2005).
Venerable decisions of the Supreme Court suggest that a court may always consider the jurisdiction of a foreign court in cases where a party seeks recognition, of the foreign judgment as a matter of comity. See Thompson v. Whitman, 85 U.S. (18 Wall.) 457, 461, 21 L.Ed. 897 (1873) (“[A]s to a foreign judgment it is perfectly well settled that the inquiry is always open, whether the court by which it was rendered had jurisdiction of the person or the thing.”); Rose v. Himely, 8 U.S. (4 Crunch) 241, 268-69, 2 L.Ed. 608 (1808) (Marshall, C.J.) (concluding that as a matter of principle the personal and subject-matter jurisdiction of a foreign court “may *1177 be considered by that tribunal which is to decide on the effect of the sentence”).
The Ninth Circuit has gone so far as to hold that federal courts have an obligation to determine whether the tribal court had jurisdiction before according its judgment preclusive effect as a matter of comity. Marchington, 127 F.3d at 810-11 (“[F]ed-eral courts must neither recognize nor enforce tribal judgments if ... the tribal court did not have both personal and subject matter jurisdiction.”). Whether such an inquiry is mandatory or discretionary, however, sua s-ponte consideration appears to be the accepted practice:
Generally the courts feel free to examine the factual basis of jurisdiction under foreign law without considering whether the jurisdictional question was litigated in the foreign court, or whether it could be raised in a collateral attack on the judgment in the foreign country. Usually no reason is assigned for such reexamination of the foreign court’s jurisdiction.
Robert B. von Mehren and Michael E. 1 ’atterson, Recognition and Enforcement of Foreign-Country Judgments in the United States, in Enforcement of Foreign Country Judgments 15, 33 (Robert B. von Mehren ed., 1974); see also Conflicts of Law, Foreign Judgments, Basis of Jurisdiction of Foreign Court Determined, by Forum’s Concepts, 34 Va. L.Rev. 956, 957 (1948) (“[W]ant of jurisdiction of the court over the parties or the subject matter will always negative the validity of the judgment.”). Therefore, under a comity analysis, we at least may consider sua, sponte whether the tribal court had subject-matter jurisdiction.
Whether the inquiry is preclusion or comity, we have strong prudential reasons to address the jurisdiction of the tribal court in this case. First, the tribal court’s jurisdiction to hear cases under § 1981 and § 1985 is a purely legal question, requiring no factual development. See Russell v. SunAmerica Sec., Inc., 962 F.2d 1169, 1172 (5th Cir.1992) (considering res judicata on the court’s own motion because, “where all of the relevant facts are contained in the record before us and all are uncontroverted, La court] may not ignore their legal effect, nor may [it] decline to consider the application of controlling rules of law to the dispositive facts, simply because neither party has seen fit to invite [its] attention to the issue by technically correct and exact pleadings”).
Second, after Hicks, the answer is clear. Hicks held unequivocally that a tribal court cannot entertain claims under 42 U.S.C. § 1983. Although application of Hicks to claims brought under § 1981 and § 1985 is technically a question of first impression for our Circuit, there is no reason to distinguish one section of the Reconstruction-era civil rights laws from the others. The Hicks Court reasoned that tribal courts are not courts of general jurisdiction with respect to nonmembers, 533 U.S. at 367, 121 S.Ct. 2304, and “no provision in federal law provides for tribal-court jurisdiction over § 1983 actions.” Id. at 368, 121 S.Ct. 2304. The same is true of § 1981 and § 1985.
Third, and most important, reliance on jurisdictional grounds—unlike due process—does not impugn the tribal courts. Cf. Hilton v. Cuyot, 159 U.S. 113, 186, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (noting that if a defendant can “prove that [a prior] judgment was rendered by a foreign court, which had no jurisdiction,” then “he has no occasion to impeach the justice of the judgment”). To suggest that another court fails to provide a full and fair opportunity to litigate, not only in one case but as a matter of basic structure, is a step we should not take lightly. By applying Hicks, we would straightforwardly decide *1178 the ease without impugning the basic procedural; fairness of the courts of the Santa Ana Pueblo.
Accordingly, I concur in the judgment of the Court.