BEAM, Circuit Judge,
concurring specially.
In Nevada v. Hicks, 633 U.S. 353, 373-74, 121 S.Ct. 2304, 160 L.Ed.2d 398 (2001), the Court rejected the notion that qualified immunity claims should be considered in reviewing tribal court jurisdiction because such immunity defenses are not jurisdictional. Although Hicks did not specifically discuss sovereign immunity, which has been frequently described as a threshold jurisdictional issue in our circuit, the Tenth Circuit concluded that Hicks stands for the proposition that courts should consider tribal court jurisdiction under Montana “before reaching the sovereign immunity question.” MacArthur v. San Juan County, 309 F.3d 1216, 1227 (10th Cir.2002). In the event that the Tenth Circuit’s sequencing of these issues is correct, I would also reverse the district court’s conclusion that the Tribal Court had jurisdiction over the plaintiffs’ underlying tort action under Montana.
“We review a district court’s grant of summary judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.” Copeland v. Locke, 613 F.3d 875, 879 (8th Cir.2010) (quotation omitted). “The extent of tribal court subject matter jurisdiction over claims against nonmembers of the Tribe is a question of federal law which we review de novo.” Attorney’s Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Miss. in Iowa, 609 F.3d 927, 934 (8th Cir.2010), cert. denied, — U.S. -, 131 S.Ct. 1003, — L.Ed.2d - (2011).
Under Montana and its progeny, a tribal court’s civil jurisdiction generally does not extend to the activities of nonmembers of the tribe. Montana, 450 U.S. at 565, 101 S.Ct. 1245; Strate v. A-1 Contractors, 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); see Attorney’s Process, 609 F.3d at 936 (“Montana’s analytic framework now sets the outer limits of tribal civil jurisdiction—both regulatory and adjudicatory—over nonmember activities on tribal and nonmember land.”). The plaintiffs concede that Amerind is a nonmember of the Tribe,[10] but they contend that ARMC, and by extension Amerind, is subject to the Tribal Court’s jurisdiction because ARMC entered into a consensual agreement with TMHA, an entity of the Tribe. This argument is premised on Montana’s “consensual relationship” exception, which provides that a tribal court retains jurisdiction over “the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.” Montana, 450 U.S. at 565, 101 S.Ct. 1245; Strate, 520 U.S. at 456-57, 117 S.Ct. 1404. This is a limited exception, however. The tribe retains jurisdiction only over suits which *690 “have a nexus to the consensual relationship itself.” Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001). In other words, “[a] nonmember’s consensual relationship in one area ... does not trigger tribal civil authority in another—it is not in for a penny, in for a Pound.” Id. (internal quotation omitted).
Here, the district court agreed with the plaintiffs and found that their direct suit against Amerind fell under Montana’s consensual relationship exception. The court emphasized that the dispute between Amerind and the plaintiffs was “distinctively tribal in nature,” Amerind II, 585 F.Supp.2d at 1129, and that the contract between ARMC and TMHA was “directly at the heart of this dispute.” Id. I disagree.
While the scope of tribal courts’ jurisdiction over nonmembers is admittedly “ill-defined,” Hicks, 533 U.S. at 376, 121 S.Ct. 2304 (Souter, J., concurring), the following cases are instructive in applying Montana to the facts presented here. In Strate, Gisela Fredericks was seriously injured when her automobile collided with a gravel truck driven by Lyle Stockert and owned by A-l Contractors (A-l), Stoe-kert’s employer. 520 U.S. at 443, 117 S.Ct. 1404. The accident occurred on a North Dakota state highway that ran through the Fort Berthold Indian Reservation, home of the Three Affiliated Tribes. Id. at 442-43, 117 S.Ct. 1404. Although Fredericks, Stockert, and A-l were all nonmembers of the Tribes, Fred-ericks filed suit in tribal court under Montana’s consensual relationship exception. Id. at 443, 117 S.Ct. 1404. Fredericks argued that the tribal court had jurisdiction over the suit because A-l was working on the reservation pursuant to a subcontract with a corporation wholly owned by the Tribes. The Supreme Court rejected this argument, reasoning that “[a]l-though A-l was engaged in subcontract work on the Fort Berthold Reservation, and therefore had a ‘consensual relationship’ with the Tribes, Gisela Fredericks was not a party to the subcontract, and the [Tjribes were strangers to the accident.” M at 457, 117 S.Ct. 1404 (second alteration in original) (internal quotation omitted).
In Nord v. Kelly, 520 F.3d 848 (8th Cir.2008), we considered a case factually similar to Strate. There, Chad Nord, a non-Indian, was driving a semi-truck owned by Nord Trucking when he collided with an automobile driven by Donald Kelly, a member of the Red Lake Band of Chippewa Indians. Id. at 851. The accident occurred on a Minnesota state highway that ran through the Red Lake Indian Reservation. Id. Kelly sued Nord in tribal court under Montana’s consensual relationship exception, emphasizing that Nord Trucking had a consensual commercial relationship with the Red Lake Band to haul and remove timber from the reservation. We disagreed, concluding that “the accident gave rise to a simple tort claim between strangers, not a dispute arising out of the commercial relationship.” Id. at 856 (emphasis added). Importantly, we also determined that whether Nord was driving in connection with Nord Trucking’s contract with the Red Lake Band at the time of the accident was immaterial because “the dispute merely involves the tor-tious conduct of a run-of-the-mill highway accident between strangers, and no amount of discovery can alter the nature of that claim.” Id. (internal quotation omitted). Note that in Nord, unlike in Strate, the plaintiff was a member of the tribe whose court was attempting to assert jurisdiction.
In the present case, the plaintiffs initially filed suit against TMHA in the Tribal *691 Court, asserting that the TMHA negligently maintained a house it leased to individuals on the Turtle Mountain Indian Reservation. The plaintiffs amended their complaint to include ARMC as a defendant because ARMC was TMHA’s insurer. Then, they dismissed TMHA with prejudice, leaving Amerind, ARMC’s successor, as the sole defendant in the suit. Thus, what began as a distinctively tribal personal injury/wrongful death suit between the plaintiffs and TMHA became a suit between the plaintiffs and Amerind—i.e., a suit between “strangers.” As in Strate and Nord, the plaintiffs are not parties to ARMC’s contract with TMHA. Indeed, the Scope of Coverage agreement expressly states that “[t]his ... document is a contract between you and us,” defining “you” as TMHA and “us” as ARMC. The agreement also expressly excludes “[t]en-ants and participants of mutual help home ownership programs” from the definition of “Covered Person.”
I disagree with the district court’s determination that “[t]he contract between [ARMC] and [TMHA] is directly at the heart of this dispute.” Amerind II, 585 F.Supp.2d at 1129. In reality, it is TMHA’s alleged negligence that is “directly at the heart” of the plaintiffs’ underlying personal injury and wrongful death claims. The district court itself recognized that, even under Turtle Mountain tribal law, the secondary question of whether the ARMC policy covers the plaintiffs’ losses does not arise unless and until “the plaintiffs ... can establish that [TMHA] was negligent and that such negligence was the proximate cause of the injuries sustained by the plaintiffs.” Id. at 1130.
While ARMC had a consensual relationship with TMHA, it was TMHA’s alleged negligence, not ARMC’s contractual relationship with TMHA, that gave rise to the plaintiffs’ personal injury/wrongful death suit. The Supreme Court has cautioned against broadly applying Montana’s exceptions and made it clear that when it comes to a nonmember’s consensual relationship with a tribe or its members, it is not “in for a penny, in for a Pound.” Atkinson, 532 U.S. at 656, 121 S.Ct. 1825 (quotation omitted). Accordingly, I would find that the Tribal Court does not have jurisdiction over the plaintiffs’ direct suit against Amerind under Montana.

. Amerind is jointly owned by three Charter Tribes, none of which is the Turtle Mountain Band of Chippewa Indians (Tribe).